.IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 22, 2015

**GREGORY GLEN PHILLIPS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 288495     Barry A. Steelman, Judge**

---

**No. E2014-00544-CCA-R3-PC - Filed March 9, 2015**

---

The Petitioner, Gregory Glen Phillips, appeals the Hamilton County Criminal Court's denial of his petition for post-conviction relief from his 2012 guilty plea to felony reckless endangerment and his two-year sentence. The Petitioner contends that he received the ineffective assistance of counsel and that his guilty plea was unknowingly and involuntarily entered. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Gregory Glen Phillips.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Senior Counsel; William H. Cox III, District Attorney General; and Amanda Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from the Petitioner's pleading guilty to felony reckless endangerment. He was indicted for resisting arrest, felony reckless endangerment, violating the implied consent law, and third offense driving under the influence (DUI) while a minor was inside the vehicle. On June 11, 2013, the Petitioner filed a petition for post-conviction relief alleging that his guilty plea was unknowing and involuntary, that his conviction was based on a coerced confession, and that the State failed to disclose favorable evidence. The Petitioner also alleged that he received the ineffective assistance of counsel by counsel's failure to question witnesses and to challenge two increases in his bond despite the police officers' untrue statements at the preliminary hearing and in the affidavits.

**Guilty Plea Proceedings**

On June 11, 2012, the Petitioner pleaded guilty to felony reckless endangerment, and the remaining charges were dismissed. During the colloquy with the trial court at the guilty plea hearing, the Petitioner stated that he had read the indictment and the guilty plea petition and that counsel had explained and reviewed each document with him. The court explained the possible sentences for each of the charged offenses and asked the Petitioner if "there [was] any reason today that you would not be able to understand what you're doing." The Petitioner said no. The Petitioner stated that he had only taken his prescribed medications and that his medications did not interfere with his ability to understand what he was doing. The Petitioner understood that he was pleading guilty to felony reckless endangerment and that the remaining charges would be dismissed. The Petitioner understood that his conviction would remain on his criminal record and might be used in the future to enhance punishment for a future conviction.

The trial court advised the Petitioner that he was not required to plead guilty and that he had the right to plead not guilty and proceed to a trial, to counsel at a trial, to confront and cross-examine witnesses against him, to testify on his own behalf, and to appeal any conviction and sentence. The Petitioner stated that he understood he was waiving these rights by pleading guilty.

According to the State's recitation of the facts, on November 4, 2011, at 10:00 p.m., police officers were dispatched to a disturbance at a local restaurant. When the officers arrived, the Petitioner had already left. The officers were provided a description of the Petitioner's vehicle and the direction in which it traveled. The officers saw the vehicle traveling on the roadway and saw the vehicle "cut from the middle lane to the right directly in front of another car, almost causing a crash." The officers initiated a traffic stop, and the Petitioner stopped in the roadway. The Petitioner and three other people were inside the vehicle, including a child who was less than two months old.

The police officers spoke with the Petitioner, who smelled of alcohol. The Petitioner claimed he had consumed two margaritas at the restaurant, but the Petitioner performed poorly on the field sobriety tests. Not long after the traffic stop and upon the officers' request, hospital staff administered a breath test, which was not calibrated or certified by the State. The test showed an alcohol concentration of 0.03.

In light of the breath test, the parties agreed that the Petitioner would plead guilty to felony reckless endangerment, that the remaining charges would be dismissed, and that the Petitioner would receive a two-year sentence to be served on probation. He was released from custody after receiving credit for time served. The Petitioner confirmed the substance

of the plea agreement for the trial court. He told the court that he did not own a vehicle and expressed a desire for his probation supervision to be transferred to Bradley County where he lived. The court told the Petitioner that he could request a transfer but that it could not guarantee approval of a transfer request. The Petitioner understood and said he could comply with the terms of his probation. The court asked the Petitioner if he had any questions, and the Petitioner said no.

## Post-Conviction Proceedings

At the post-conviction hearing, the Petitioner testified that his guilty plea was involuntarily and unknowingly entered due to injuries sustained during his arrest when the officers "slammed" him into some doors and onto the ground. The Petitioner requested an "MRI" at the hospital because of extreme head pain. He said the MRI showed brain hemorrhaging and swelling. He said that for a long time after his arrest, he had severe headaches and dizziness when he woke. He said that on November 4, 2011, while he was in confinement, his injuries were "re-aggravated" when he sustained lacerations requiring stitches. He requested another MRI, but he received no medical attention. He said he was still suffering from headaches and dizziness on the day he entered his guilty plea, although the symptoms subsided afterward. He said that he told counsel about his symptoms and about the incident in the jail that re-aggravated his symptoms. He said, though, that on the day of the guilty plea hearing, he was unable to say "hardly" anything to counsel.

The Petitioner testified that he did not provide a statement to the police relative to his charges. He told counsel at their first meeting what occurred and asked her to obtain evidence from the police cruiser and the hospital. He said the police officer was untruthful in the affidavit and at the preliminary hearing. He also asked counsel to speak with the manager at Chili's restaurant where the incident began, but he said counsel did not question the manager. Relative to the police cruiser, he thought the video recording would show that he was not resisting, that the officer slammed his head on the ground, that he signed the implied consent form, and that he did not refuse blood and breath tests. He said counsel made no attempt to obtain the recording. Relative to the implied consent form, the Petitioner told counsel that two pens were used and that the officer altered the form.

The Petitioner testified that he was notified four or five days after his arrest that charges were being filed and that he thought the officer took time to decide "what he was going to say and . . . to cover his tracks." He said nobody attempted to "uncover the truth." The Petitioner thought hospital video cameras might show that the officer "yanked" him from the police cruiser, "ran him face-first" into the sliding-glass doors, and "power-drove" him into the asphalt. The Petitioner said that the officer asked him to perform a breath test, that he complied, and that the result was 0.31. He said the officer became angry and accused him

of not blowing hard enough. The Petitioner performed the test again, and the result was 0.32.

The Petitioner testified that he asked counsel to question the manager about the incident at Chili's and that he told counsel what occurred that night. The Petitioner, his former wife, and his children had dinner at Chili's. He said his former wife argued with a female patron, and the manager told the Petitioner that the police had been called to the restaurant. The Petitioner asked if he needed to stay and speak to the police, and the manager said no and permitted the Petitioner to take his family home. He said that he was stopped by the police about ten minutes later, that the officer asked if he had been drinking, and that he told the police he had not. The Petitioner admitted, though, he drank one margarita to celebrate his birthday. He said that the officer refused to permit his former wife to use the restroom during the drive to the hospital and slammed on the brakes, causing her head to hit the "back of the cage." The Petitioner said that he "let out a verbal assault" against the officer and that although he should not have cursed the officer, no reason existed for the officer's conduct. He said counsel "blew off" interviewing witnesses and obtaining the video recordings. He noted counsel obtained the breath test results only a few days before the guilty plea hearing.

The Petitioner testified that counsel filed a motion to reduce his bond because it increased from $4000 to $50,000 to $100,000. He said he received disability benefits and could not post bond. He said he remained in jail for six months for something he did not do. He requested counsel seek a medical release because he had re-aggravated his injuries from the arrest and because he needed to see his "liver doctor" and neurologist. He thought the hearing on the day he entered his guilty plea pertained to a medical release. He said counsel discussed the terms of the plea offer, and he rejected it. He said that he was getting ready to tell the trial court he was rejecting the offer, when counsel nudged him with her elbow and told him to be quiet. Counsel told the court the terms of the agreement and told the Petitioner, "If you're not happy, you can file an appeal." He said he had been in confinement for six months at the time of his guilty plea and was worried about his elderly, disabled mother who lived with him until he went to jail. He said he accepted the offer, pleaded guilty, and went home to his mother. He learned later that he could not appeal his guilty plea and filed a petition for post-conviction relief. He said he wanted the truth to come out and did not think he deserved a felony conviction or probation.

The Petitioner testified that had counsel investigated his case, questioned witnesses, and sought a medical release, he would not have entered a guilty plea. He said he did not plan to plead guilty because he was innocent and noted the preliminary hearing was scheduled three days after he entered his guilty plea. He said he could have spent three additional days in jail and gone home. He believed the officer made an unlawful arrest and attempted to cover his tracks.

On cross-examination, the Petitioner testified that the police officer filed charges on November 8, 2011, and that he posted bond at that time. He said that while his case was pending in general sessions court, he was free on bond until a January 26 or 27, 2012 court appearance. He said that when he appeared in court in January, his bond increased to $50,000. He agreed a preliminary hearing was held on March 7, 2012, when he was in confinement. He said that his case was bound over to the grand jury and that his bond was increased again to $100,000. He agreed counsel was not appointed to represent him until the grand jury returned the indictment.

The Petitioner testified that counsel filed a motion to reduce or reinstate his bond, that a hearing was held, and that the motion was denied, although he did not know the reason. He said he and counsel met at least three times before he entered his guilty plea. He admitted he had a previous DUI conviction but denied counsel discussed the possible sentence for a second DUI conviction. He denied counsel discussed the possible sentences for the remaining charges. He said the police officer never asked for a blood sample.

The Petitioner testified that he pleaded guilty but that "it was dropped" on him at the eleventh hour. He said he did not want to accept the plea offer but knew he would continue to be in confinement if he did not. He did not want to argue with counsel in the courtroom. Counsel advised him to accept the offer if he wanted to see his mother. He did not recognize the guilty plea petition but agreed his signature was on it. He did not recall counsel's reviewing the form with him.

The Petitioner testified that before he was released, his sister moved their mother into her home in order to obtain their mother's Social Security income. He said that his mother wanted to return to his home but that his sister obtained two orders of protection. He said his probation was violated because of an incident related to the orders of protection, and he served thirty days in confinement. He said the order of protection violation was dismissed months later.

Counsel testified that she had worked for the public defender's office for twenty-two years and had practiced law for thirty-three years. She continuously maintained a workload of eighty to eighty-five cases. Relative to the Petitioner's case, Jill Whaley was counsel's investigator, and Erica Watson was counsel's assistant. Counsel might have had law school interns assist, as well. She received the case file on May 4, 2012, and she met with the Petitioner on May 14. Before their first meeting, she instructed Ms. Whaley to obtain judgments of the Petitioner's previous convictions because counsel wanted to know if the Petitioner had more than one DUI conviction.

Counsel testified that she and the prosecutor continuously discussed the Petitioner's case. Counsel asked the prosecutor about the Petitioner's medical records and the Petitioner's alcohol content results. Counsel received several plea offers from the prosecutor because of the duration of the Petitioner's pretrial confinement, which was more than the statutory minimum service requirement for a third DUI conviction. She identified a May 22, 2012 email between her and the prosecutor discussing a plea offer and the thirty-day DUI enhancement relative to having a child in a vehicle.

Counsel testified that the bond hearing was held on May 21, 2012, although she did not recall discussing a bond hearing with the prosecutor. She identified a May 29, 2012 email between her and the prosecutor, which discussed the plea offer from the State. She agreed the prosecutor requested counsel inform her if the Petitioner accepted the offer by June 7, because the prosecutor wanted to inform the officer that his presence in court was not required for the June 11 bond hearing. Counsel agreed the Petitioner entered his guilty plea on June 11. Counsel said her file showed that the motion to reinstate the Petitioner's bond was denied on May 21 and that the case was scheduled for settlement on June 11. Counsel only found one bond motion in her file. She did not recall telling the Petitioner that a hearing on a motion to reinstate his bond was scheduled for June 11.

On cross-examination, counsel testified that Ms. Whaley found that the Petitioner had only one previous DUI conviction and that this information was used in counsel's discussions with the prosecutor. Counsel obtained the Petitioner's medical records and alcohol content test results. She recalled the test results showed an alcohol concentration below the presumptive minimum for DUI. She requested Ms. Whaley contact the Chili's manager early during the investigation, which ultimately was irrelevant because of the low alcohol content. She said that the validity of the traffic stop was another issue and that she unsuccessfully attempted to obtain "radio traffic," the police cruiser video recording, and a recording from the surveillance camera outside the hospital. Hospital personnel told counsel that the camera outside the entrance was not operational at the relevant time.

Counsel testified that the Petitioner's sole objective was to be released from confinement and to return to his mother. She explained to the Petitioner all of the ramifications of pleading guilty, the possible sentences and manner of service for the charged offenses, the possible loss of his license, and the fines. She identified the guilty plea petition and said she reviewed it with the Petitioner during a video conference a few days before he entered his guilty plea. She said that she explained to the Petitioner what he faced if convicted at a trial, the trial process, and her expectations of the proof. She said she attempted to explain that the incident at Chili's was irrelevant and that the relevant facts focused on what occurred during the traffic stop. She said she explained to him that it was his choice to accept or to reject the plea offer and that if he accepted the offer, the case would

end and he would not have the right to an appeal. She said she explained to him that he would have the right to appeal any guilty verdict and sentence if he chose to have a trial. She told the Petitioner that he would be pleading guilty to a felony and that the conviction would remain on his criminal record. She denied telling the Petitioner that she would no longer attempt to obtain the video recordings if he accepted the offer but said that was self-evident when she explained the case would end.

Counsel testified that the Petitioner continuously stated he wanted to be released and to return home to his mother and agreed she probably told the Petitioner that accepting the plea offer was the quickest way to achieve his goal. She said she probably discussed the offer with the Petitioner during the video conference and on the day he entered his guilty plea to ensure he still wanted to plead guilty. She agreed the Petitioner would have signed the petition in her presence. She did not recall the Petitioner's stating that he did not want to enter his guilty plea and that he wanted to proceed to a trial. She said the Petitioner did not express unhappiness relative to the negotiated plea agreement during the guilty plea hearing.

On redirect examination, counsel testified that the three misdemeanor charges were dismissed and that the Petitioner pleaded guilty to a felony. She agreed the guilty plea petition was undated and said she probably forgot to write the date on it. She said the factual basis for the felony reckless endangerment conviction was the Petitioner's cutting in front of another vehicle at a busy, dangerous intersection and "semi losing control of his car after that." She said her practice was not to review plea offers for the first time at a guilty plea hearing because she wanted to review offers with her clients slowly and to give her clients time to ask questions. She said that because a client could decide not to plead guilty, she also talked to her clients about a plea offer on the day of a guilty plea hearing.

On recross-examination, counsel testified that she had no reason to think the Petitioner did not understand what he was doing when he pleaded guilty. She recalled the trial judge's asking the Petitioner if he was knowingly and voluntarily entering his guilty plea and the Petitioner's stating that he was.

The Petitioner testified on rebuttal that the video conference to which counsel referred never occurred. He said that the first time he learned of the plea offer was when he arrived at the courthouse on the day he entered his guilty plea. He said, though, that he thought he was there for a bond hearing.

Upon questioning by the post-conviction court, the Petitioner testified that he recalled standing when he entered his guilty plea and talking to the trial judge. He recalled being sworn as a witness and the judge's asking him questions, but he did not recall the specific questions. He was sure the trial court followed its usual procedure during the guilty plea

hearing but said everything occurred quickly. He said that he wanted to speak to the judge but that he realized there was nothing he could say because counsel did not allow him to speak. He said he did not learn of the plea agreement until the hearing. He did not deny that he wanted to be released from confinement and to hire a private attorney. He did not recall the judge's telling him that he did not have to plead guilty and that he had a right to a jury trial. He felt that he was forced to plead guilty and said he did not want to plead guilty.

After reviewing the transcript of the guilty plea hearing, the post-conviction court found that the Petitioner did not disclose to the trial court any coerciveness by counsel, his lack of confidence in counsel's abilities, or his headaches, even though the Petitioner had the opportunity to do so. The court found that the Petitioner's recounting of the events on the date of his arrest related to the DUI, the resisting arrest, and the implied consent violation charges, not the felony reckless endangerment conviction. The court found that the Petitioner wanted to be released from confinement because he wished to return home to his elderly mother and because he wanted to retain other counsel.

The post-conviction court found that counsel represented the Petitioner for five or six weeks and met with the Petitioner two or three times. It found that counsel learned the Petitioner had one previous DUI conviction and concluded that the events before the traffic stop were irrelevant because of the Petitioner's low alcohol concentration. It found that counsel requested a recording of the "radio traffic" and a recording from the police cruiser but did not receive them. Counsel also requested a surveillance recording from the hospital but was told the camera was not operational. Relative to the plea offer, the court found that counsel conveyed the offer to the Petitioner during a video conference a few days before the Petitioner entered his guilty plea and that the Petitioner was eager to be released. The court found that counsel advised the Petitioner that accepting the offer was the quickest way for him to be released.

Relative to the Petitioner's coerced confession allegation, the post-conviction court found that the Petitioner testified that he did not speak with the police. The court credited counsel's testimony that the Petitioner had only one previous DUI conviction and that the Petitioner's alcohol concentration was too low to support a second conviction. The court found that no evidence showed counsel was deficient relative to the resisting arrest, implied consent violation, and DUI charges.

The post-conviction court found relative to the felony reckless endangerment conviction that absent favorable evidence of which counsel was unaware, any deficiency in counsel's performance was not prejudicial. Relative to the Petitioner's request for recordings from the hospital, the court found that counsel was not deficient because a recording did not exist. Relative to the radio traffic and police cruiser recordings, the court found that no

evidence was presented showing the radio traffic evidence was favorable to the Petitioner and that the evidence failed to show "that there was, at least at one time, a video recording from the" police cruiser. The court found that any deficiency in counsel's failure to obtain the recordings was not prejudicial.

The post-conviction court found relative to the Petitioner's bond that counsel challenged the increases to his bond on procedural grounds, that the trial court denied the motion, and that a continuance was granted to permit the Petitioner to prepare evidence on the issue of a reasonable bond. It found that at the next court appearance, the Petitioner chose to enter his guilty plea and not to pursue a reduction in his bond. The post-conviction court found counsel was not deficient.

The post-conviction court found that the Petitioner entered a voluntary and intelligent guilty plea. The court noted the Petitioner's previous experience with the court system, the competence of counsel, counsel's and the trial court's advice to him about the charges, and his silence at the guilty plea hearing relative to counsel's coerciveness, his lack of confidence in counsel's abilities, and his headaches. The court credited counsel's testimony that she conveyed the plea offer to the Petitioner during a video conference a few days before the guilty plea hearing. The court noted the Petitioner's acceptance of the offer was timely enough to allow counsel to inform the prosecutor that no bond hearing was necessary and that the arresting officer did not need to appear in court. The court found that no evidence suggested the Petitioner had insufficient time to determine whether he wanted to accept or reject the offer.

The post-conviction court noted that counsel's not pursuing a bond reduction, even though release from confinement was the most important factor in the Petitioner's decision to accept the plea offer, suggested the possibility that the Petitioner's guilty plea was not voluntary and intelligent. The court found, however, no evidence showed that the plea offer was conditioned on acceptance at or before the bond hearing or that a bond reduction was likely. The court also noted that the State's case was dependent upon one police officer, whose assessment of the Petitioner's intoxication level was questionable. The court, though, found that the Petitioner's conduct during the traffic stop supported a guilty plea to felony reckless endangerment. The court denied post-conviction relief, and this appeal followed.

# I

## Ineffective Assistance of Counsel

The Petitioner contends that he received the ineffective assistance of counsel. He argues counsel was ineffective because she failed to investigate and to pursue a bond

reduction. The State responds that the Petitioner received the effective assistance of counsel. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2012). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2012). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Relative to counsel's failure to investigate the Petitioner's case, counsel's accredited testimony shows that she performed an adequate investigation. Counsel and the prosecutor discussed the Petitioner's case. Counsel obtained the Petitioner's previous criminal history, which showed only one DUI conviction. Counsel obtained the Petitioner's medical records and alcohol content test results, which showed an alcohol concentration below the statutory minimum for DUI. Although counsel requested her investigator speak to the restaurant manager regarding the events that transpired before the traffic stop, counsel concluded that those events were irrelevant given the Petitioner's low alcohol content. We note that counsel successfully negotiated a plea agreement that included a dismissal of all the charges related to the Petitioner's alcohol consumption at the restaurant.

Relative to the events transpiring after the Petitioner left the restaurant, counsel unsuccessfully attempted to obtain the radio traffic recording and the video recordings from the police cruiser and the hospital. No recording from the hospital existed. We note that the Petitioner did not present any recordings at the post-conviction hearing or present evidence relative to whether the radio traffic and police cruiser recordings existed. We also note that the Petitioner failed to present any evidence at the hearing that existed but was unknown to counsel. The record shows that counsel was not deficient in her attempts to obtain the recordings.

Relative to the Petitioner's request for a bond reduction, the record reflects that a hearing was held on May 21, 2012. Although counsel did not recall discussing the bond with the prosecutor, counsel's file showed that the motion to reinstate the Petitioner's bond was denied on May 21 and that the case was scheduled for settlement on June 11. The Petitioner conceded that counsel filed a motion to reduce or reinstate his bond, that a hearing was held, and that the motion was denied, although he did not know the reason. Although counsel only filed one motion, counsel testified that the Petitioner's only objective was to be released from confinement to take care of his elderly mother. The record reflects that between May 21, 2012, and the next court appearance on June 11, 2012, counsel negotiated a plea agreement that achieved the Petitioner's goal. The May 29 email between counsel and the prosecutor discussed a plea offer and requested counsel inform the prosecutor if the Petitioner accepted the offer because the prosecutor wanted to inform the arresting officer that his presence was not needed for a bond hearing on June 11. The Petitioner failed to present any evidence showing that a bond reduction would have been likely in a subsequent hearing. The record does not preponderate against the post-conviction court's findings, and we conclude that the Petitioner is not entitled to relief on this basis.

## II

### Involuntary and Unknowing Guilty Plea

The Petitioner contends that his guilty plea was involuntarily and unknowingly entered. He argues that the choice between remaining in confinement and pleading guilty to felony reckless endangerment, which resulted in his release, made his guilty plea involuntary and unknowing. The State responds that the Petitioner failed to establish that his guilty plea was unknowing and involuntary. We agree with the State.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The record reflects that the Petitioner entered a knowing, intelligent, and voluntary guilty plea. Although the Petitioner testified at the post-conviction hearing that he first learned of the plea offer on the day he entered his guilty plea, counsel's accredited testimony shows that counsel advised him of the offer and reviewed with him the guilty plea petition during a video conference a few days before the guilty plea hearing. Counsel explained to the Petitioner all of the ramifications of pleading guilty, the possible sentences and manner of service of the charged offenses, the possible loss of his license, and the fines. Counsel's usual practice was to explain to a client what he or she faced if convicted at a trial, the trial process, and her expectations of the proof. Counsel explained to the Petitioner that the events at the restaurant were irrelevant for the felony reckless endangerment charge because the relevant conduct focused on the traffic stop. Counsel told the Petitioner that the decision to accept or to reject the offer was his and that he was not entitled to an appeal if he accepted the offer. Counsel told the Petitioner that he would be pleading guilty to a felony and that the conviction would remain on his criminal record.

-12-

The record reflects that the Petitioner's sole objective was to be released from confinement and to return home to care for his elderly mother. Although counsel told the Petitioner that the quickest way to obtain release was to plead guilty, the Petitioner was never advised that he had to plead guilty. Counsel and the Petitioner, likewise, discussed the plea offer on the day of the guilty plea hearing to ensure the Petitioner had no additional questions or reservations about pleading guilty. The Petitioner had ample time to determine whether he wanted to accept the offer or proceed to a trial. The Petitioner signed the petition, and counsel did not recall the Petitioner's stating he did not want to plead guilty. Counsel had no reason to think the Petitioner did not understand what he was doing when he pleaded guilty. The record reflects that the Petitioner understood he had a choice to enter a guilty plea and be released to probation or to remain in confinement until a trial.

Our review of the guilty plea hearing transcript shows that the Petitioner told the trial court that he read the indictment and the guilty plea petition and that counsel explained and reviewed each document with him. The Petitioner told the court that he understood what he was doing by pleading guilty. The Petitioner noted for the court that his prescribed medications did not affect his ability to understand he was pleading guilty to felony reckless endangerment. We note the Petitioner did not express any concern that his headaches affected his ability to understand what he was doing by pleading guilty. The Petitioner understood that he was waiving certain rights by pleading guilty, including the right to an appeal. The only question the Petitioner had during the hearing was related to transferring his probation to his county of residence. The Petitioner did not express at the hearing any concern about counsel's competence or inform the court that counsel was forcing him to plead guilty. We note that the Petitioner's previous DUI conviction shows experience with the criminal justice process. We conclude that the record does not preponderate against the post-conviction court's findings, and we conclude that the Petitioner entered a knowing, intelligent, and voluntary guilty plea. He is not entitled to relief on this basis.

The judgment of the post-conviction court is affirmed.


_____
ROBERT H. MONTGOMERY, JR., JUDGE